**UNITED STATES v. GOLDER et al.**
No. 6442.

District Court, E. D. Pennsylvania.

July 30, 1935.

Thomas J. Reilly, Asst. U. S. Atty., and Charles D. McAvoy, U. S. Atty., both of Philadelphia, Pa., for plaintiff.

Otto Kraus, Jr., and Benjamin M. Golder, both of Philadelphia, Pa., for defendants.

KIRKPATRICK, District Judge.

These defendants have been indicted for conspiracy to violate the Act of June 13, 1934, c. 482, 48 Stat. 948, Public No. 324, 73d Congress (40 USCA §§ 276b, 276c), which was intended to prohibit and punish a practice sometimes resorted to by public works contractors commonly called the "kick-back." The indictment describes the object of the conspiracy in the same general words used in the act, but it then goes on to set out in detail the specific things which, it says, the defendants conspired to do and these things clearly are not crimes against the United States under the act in question or any other. For that reason the indictment must be quashed.

The act is as follows (section 1 [40 USCA § 276b]) : " * * * whoever shall induce any person employed in the construction, prosecution, or completion of any public building, public work, or building or work financed in whole or in part by loans or grants from the United States, or in the repair thereof to give up any part of the compensation to which he is entitled under his contract of employment, by force, intimidation, threat of procuring dismissal from such employment, or by any other manner whatsoever, shall be fined not more than $5,000, or imprisoned not more than five years, or both." ·

In the simplest language possible, the thing which the act makes a crime is employing a workman at a certain rate of pay and then compelling him to waive or return some part of his pay by threat of dismissal, force, or intimidation. It is of the essence of the offense that the money which he thus is made to give up is money *to which he is entitled under his contract of employment.* That is the precise language of the act. "Contract of employment" means the agreement between the contractor and the workman, not the contract between the contractor and the public body in charge of the work. If the workman receives the whole amount of the wages which the employer agreed to pay him when he went to work and is not compelled to give back or to waive any part of it, the act has not been violated. It does not reach (and from the reports of the Committees of the House and Senate apparently was not intended to reach) cases where, at the time he was employed, the employee was induced by whatever means to accept a lower rate of pay than he might have insisted upon by reason of his skill, the kind of work, or his classification, or than that which the contractor had agreed with any board or public official to pay or which the government required him to pay.

What the indictment charges is something quite different from that which the act of Congress refers to. It says, in substance, that the defendants conspired to violate the act by employing and paying skilled workmen under common labor classifications under threats of dismissal, etc. It says that the workmen in question became entitled to the rate of pay for skilled labor "under the contract and posted wage scale" because they were engaged in skilled labor and thereby became so entitled. It does not state that any workman became entitled by his contract of employment to any rate of pay other than that which he actually got nor that he was compelled to return any money which the defendants had paid him or to give up any wages which they had agreed to pay him. What "The contract and posted wage schedule" is by which the indictment says the workmen became entitled to a certain rate of wage is not defined, but I assume that it means the general contract which the defendants had with the Delaware River Joint Commission for the construction of the subway and underpass. The meaning of the indictment is that the defendants hired men as common laborers and agreed to pay them the wage for common labor, when as a matter of fact the men were skilled workmen and worked at skilled labor. To do so may have been a breach of the defendants' contract with the Joint Commission, but it was not a violation of this highly penal criminal statute.

I have tried to avoid a technical approach to the question in what has been said. I have not overlooked the general rule that in an indictment for conspiracy, the conspiracy is the gist of the offense and the object of the conspiracy need not be set out with all the particularity of pleading which would be required if the simple offense was charged. But when the indictment does show exactly what the defendants are accused of conspiring to do and when it appears that that is something which does not violate any law of the United States, it would be perfectly futile to go through a long trial only to learn at the

end that the facts established constituted no crime.

The motion to quash will therefore be sustained.